QUINN HOMES, INC. *v.* BAY CITY IMPROVEMENT ASSOCIATION, INC.

[No. 843, September Term, 1979.]

*Decided May 7, 1980.*

The cause was argued before MORTON, LOWE and COUCH, JJ.

*Gabriel J. Poggi,* with whom were *Blondell & Poggi* on the brief, for appellant.

*John W. Sause, Jr.,* for appellee.

MORTON, J., delivered the opinion of the Court.

This is an appeal from a declaratory judgment entered in the Circuit Court for Queen Anne's County (Carter, J.) which affirmed the enforcement by the Bay City Improvement Association, Inc., appellee, of a certain restrictive covenant imposed on property owned by Quinn Homes, Inc., appellant. Appellant contends that the lower court's construction of the covenant was erroneous.

The covenant in question is one of several imposed by The Bridgeside Company, the original developer, in 1952 on a 404 acre parcel of land of which the subject property is a part. The covenants were properly recorded and their validity is unquestioned. They provided for the planned development of a residential community by, among other things, imposing use restrictions on the residential lots and establishing a property owner's association (appellee) to administer and enforce the covenants. One of the covenants, G-1, stated:

> "Except as hereinbefore recited [*i.e.,* except for the possible establishment of a retail commercial area at a certain location], all lots in said Community shall be for residential use only and not for purposes of any trade or business whatsoever."

Appellant wants to build a "speculative home" on its lot which, upon completion, will be offered for sale to the general public. It has on at least two prior occasions constructed houses on other lots subject to covenants, but then it had specific contract-purchasers for the homes. Now it has no such contract-purchaser in advance.

The covenants require that all construction plans be approved by appellee in advance and appellant, accordingly, submitted its plans to appellee. But appellee refused to approve them unless appellant signed an "Application for

approval of plans" (Application). Among other things the Application provides that the applicant agrees that "[t]he proposed building . . . is to be erected for the sole use and occupancy of the applicant as a residence and is not being built and will not be used as a sample or speculative home." Since this is precisely appellant's purpose, it refused to sign.

Appellant thereupon sought a declaratory judgment in the court below that would allow it to construct the house. Appellant contended that the warranties contained in the Application were not required by the covenants. But the court below found that the aforementioned covenant G-1 did proscribe the use of any lot for building and selling speculative houses, relying upon *Chesapeake Estates v. Foster,* 265 Md. 120 (1972), and that appellee's refusal to approve appellant's plans was proper.

Appellant first contends that the restrictive covenants do permit construction of speculative homes. It argues that the expressed intent of the original developer to establish a residential community is not defeated by the construction and sale of a speculative home. Since ambiguous language in covenants is construed in favor of unrestricted use, appellant concludes that the prohibited "trade or business" of G-1 can only be a business of a continuing nature.

This argument is for naught because, as appellant admits, *Chesapeake Estates v. Foster, supra,* at 125, held that a covenant identical to G-1 did prohibit construction and sale of a sample home. Appellant attempts to distinguish *Chesapeake* in two ways. First it contends that the instant case is somehow different because here we know the express intent of the original developer, whereas, in the *Chesapeake* opinion there is no mention of the original developer's intent. This is as far as appellant takes this frivolous argument and we infer that it wants to say that the intent of the original developer in *Chesapeake* was to prohibit construction of sample homes, but the intent of the original developer here was to allow them. A full reading of the *Chesapeake* opinion, however, shows that the original developer's intent there was exactly the same as here: to create a planned residential community. The lack of an

expressed statement of such from the *Chesapeake* opinion is irrelevant. Appellant also attempts to distinguish *Chesapeake* by limiting its holding to "sample" homes as opposed to "speculative" homes. It asserts there is a difference between these two terms. But whether appellant is semantically correct is of no import because the house at issue in *Chesapeake* was built for the same purpose as the one here, to sell to the general public. *Id.* at 122. In our opinion, *Chesapeake* is controlling and the covenant does prohibit construction of appellant's house.

Appellant next contends that appellee's approval of its prior uses, construction of homes for contract-purchasers, obliges it to approve its present planned use. Appellant cites no authority for this argument, but instead asserts that the uses are the same. The short answer is that the uses are not the same. Construction of a house for a contract-purchaser does not lend itself as easily to real estate speculation as does construction of a "speculative" home as the name itself implies. Appellee is not obliged as a result of its approval of appellant's prior projects to approve this one.

*Judgment affirmed; costs to be paid by appellant.*